516 A.2d 845

Hanover Bowling Center, Inc. *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board. Carol Sponseller, t/d/b/a Penn Villa et al., Appellants.

Submitted on briefs September 8, 1986, to Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Victor Dell'Alba,* for appellants.

*G. Steven McKonly,* with him, *Ruth E. Robey, Buchen, Wise, Dorr & McKonly,* for appellee.

OPINION BY JUDGE DOYLE, October 24, 1986:

This is an appeal by four liquor licensees (Protestants) from an order of the Court of Common Pleas of York County which reversed an order of the Pennsylvania Liquor Control Board (PLCB) denying a liquor license to the Hanover Bowling Center (Applicant). We reverse.

Applicant operates a 32-lane bowling alley located in Penn Township, York County. The premises also contains a food service area, a pro shop, a game room with video games and pool tables, and a nursery. The bowl-

ing alley handles approximately 500 bowlers per day, or about 1700 league and 800 "open" bowlers per week. Every weekend from Memorial Day to Labor Day, Applicant runs bowling tournaments attracting entrants from a number of states; in 1984, the tournaments had over 7,700 entrants.

While ordinarily 90 percent of the Applicant's patrons are local residents, during tournaments the percentage of tourists in the bowling alley increases to 88-90 percent of the patrons. Applicant currently operates at about 65 percent of capacity.

Applicant applied for a liquor license under the "resort area" exception of Section 461(b) of the Pennsylvania Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-461(b), since the number of liquor licenses in Penn Township exceeded the quota permitted under Section 461(a) of the Code.[1] It was conceded that Penn Township is located within a "resort area." *See In re D.E. Weinbrenner III and James B. Weinbrenner, t/a South Hills Golf Course,* No. 25 Misc. Action (York County 1979).[2]

At a hearing before a PLCB hearing examiner, three of six licensees within ten miles of Applicant's premises testified. Basically, they testified that there was no need for an additional license to be granted since their establishments were operating under capacity. Witnesses for Applicant testified that there was a need for the li-

---

[1] It is uncontested that, under Section 461(a), the quota for restaurant liquor licenses in Penn Township is four.

[2] The Protestants, Applicant, the PLCB, and the court of common pleas agreed that Penn Township is within a resort area and, consequently, we treat it as such here. We are mindful, however, that a mere concession by the PLCB that an area is a "resort area" is not binding precedent upon this Court. *Pennsylvania Liquor Control Board v. New Greensburg Aerie Fraternal Order of Eagles No. 3920, Inc.,* 82 Pa. Commonwealth Ct. 272, 476 A.2d 985 (1984).

cense because it would increase Applicant's business and allow Applicant to meet frequent patron requests for alcoholic beverages during and after bowling. They also testified that bowlers found it inconvenient to leave the bowling alley in order to get alcoholic beverages.

Without making detailed findings of fact, the PLCB denied the license, concluding that there was "no evidence of necessity" for it. Applicant appealed this decision to the Court of Common Pleas of York County. Following a *de novo* hearing at which the court took additional evidence on the issue of actual necessity, the court made findings of fact to the effect that 88 to 90 percent of the tournament bowlers come from outside the immediate area; that it was inconvenient for Applicant's patrons to have to resort to the establishments of existing licensees; and that Applicant attracted a large number of tourists each year for the tournaments.[3] Accordingly, the court found that the PLCB abused its discretion in denying the license and ordered that the license be issued. From this, the Protestants appeal.

Because it was conceded that Penn Township is in a "resort area", the sole issue before this Court is whether Applicant showed the "actual necessity" for a liquor license required in order to obtain one under the "resort area" exception of the Liquor Code.

In a liquor license application case where, as here, the court of common pleas conducts a hearing *de novo* at which it receives additional evidence and makes its own findings of fact, our scope of review is limited to determining whether substantial record evidence supports its findings of fact, and whether it abused its dis-

---

[3] In its opinion, the court of common pleas states that the number of *tournament* bowlers per year exceeds 80,000. A review of the record disclosed that this is mistaken: 80,000 is the annual number of *all* patrons of Applicant's establishment. The number of participants in the bowling tournaments is roughly 7,700.

cretion or committed an error of law. *Fisher v. Pennsylvania Liquor Control Board,* 93 Pa. Commonwealth Ct. 63, 500 A.2d 218 (1985).

"Actual necessity" for a liquor license is broadly construed to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would use the facility of the licensee. *Pennsylvania Liquor Control Board v. Bridgeport Young Men's Club,* 84 Pa. Commonwealth Ct. 13, 478 A.2d 157 (1984). In assessing actual necessity, the factors to consider are: 1) the needs of persons who will use the facility; 2) the number and types of existing establishments in the area; and 3) whether the persons to be served differ from those served by existing licensees. *Pennsylvania Liquor Control Board v. Spring Gulch,* 87 Pa. Commonwelath Ct. 395, 487 A.2d 472 (1985). In other words, the question is whether an applicant can provide a service where and when present licensees cannot. *Appeal of Brandywine Valley Inn, Inc.,* 53 Pa. Commonwealth Ct. 203, 417 A.2d 823 (1980).

Guided by these standards, and bearing in mind that the regulatory scheme in respect to liquor licenses is designed to restrain the sale of liquor, not promote it, *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981), we hold that there is no substantial evidence to support the conclusion that Applicant demonstrated "actual necessity" for the liquor license. A review of the record indicates that the court of common pleas was correct in finding that most of the *tournament* bowlers at Applicant's establishment are tourists and that they find it "inconvenient" to not be able to purchase and consume alcoholic beverages on Applicant's premises. This, however, is not enough to show "actual necessity." For instance, a key consideration is whether existing licensees are capable of serving the need created by an influx of people to the resort area. *Willow-*

*brook Country Club, Inc. Liquor License Case,* 409 Pa. 370, 187 A.2d 154 (1962); *Pesante Appeal,* 82 Pa. Commonwealth Ct. 242, 476 A.2d 474 (1984). Nothing in the record contradicts the evidence presented by the Protestants that they and other current licensees are operating under capacity. Moreover, the influx of *tournament* bowlers only occurs on weekends between Memorial Day and Labor Day, and in 1984 amounted to a little more than 7,700 people; this is hardly enough to show that the existing licensees are incapable of meeting any increased demand. Without a showing of incapacity of current licensees to meet the need, mere convenience of the patrons of the bowling center does not establish "actual necessity." *Pennsylvania Liquor Control Board Appeal,* 82 Pa. Commonwealth Ct. 142, 474 A.2d 738 (1984). Were it otherwise, every facility of a recreational nature could lay claim to an exception under the "resort area" theory by merely proving that its out-of-area transient patrons found it inconvenient not to be able to buy alcoholic beverages *on the premises of the applicant.*

Accordingly, we find that the Court of Common Pleas of York County abused its discretion in reversing the decision of the PLCB denying a liquor license to Applicant.

Reversed.

### ORDER

Now, October 24, 1986, the Order of the Court of Common Pleas of York County, No. 56 M.A. 1985 dated October 15, 1985, is hereby reversed.